UNITED STATES of America
v.
Anthony BARATTA, Defendant.
No. 64 Cr. 1148.

United States District Court,
S. D. New York.

March 29, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Nicholas Figueroa, Asst. U. S. Atty., of counsel.

Fusfield & Lopez, Brooklyn, N. Y., for defendant; Frank A. Lopez, Brooklyn, N. Y., of counsel.

## OPINION

COOPER, District Judge.

### A. *The petition*

We have been constrained to defer this decision on defendant's motion (brought on pursuant to Title 28 U.S.C. § 2255) for an order vacating the judgment of conviction which we imposed on August 22, 1967,[1] until the completion of an inquiry initiated by us; that inquiry was precipitated by the disclosure in the moving papers that defendant obtained without authorization the confidential report submitted to us concerning him by the official probation officer in the case, the report which we studied before imposing sentence. At no time and in no manner whatever (oral or written) directly or indirectly was an application or request or even a suggestion made for permission to examine it, and in no form whatever has an order been made giving anyone the right to see it. Contrary to our expectations, the inquiry aforementioned conducted directly by us has not been completed. We fully intend to see it through and, if warranted, take appropriate action based on such conclusions we regard meet and proper.

The movant and his three co-defendants stood trial by jury before us July 17 to July 20, 1967; each was found

1. The moving papers were completed on November 15, 1972.

guilty on two charges: conspiracy (Sections 173 and 174 of Title 21, United States Code) to sell narcotic drugs knowing the drugs to have been unlawfully imported into the United States, and selling 237 grams of heroin in violation of the same statutes. The defendants were sentenced on August 22, 1967; petitioner to a term of five years imprisonment on the conspiracy count and a term of ten years imprisonment on the second count, sentences to run consecutively.[2] On appeal Baratta's conviction was affirmed.[3] His motion for reduction of sentence, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, was denied on May 14, 1969. We did not hear from him again until the instant application.

Copying extracts from the confidential report submitted to us concerning him by the probation officer, Baratta claims that this petition for Section 2255 relief is grounded on the following:

(a) The severity of the sentences herein, ten years, plus five years to run consecutively, were based upon illegally seized evidence revealing an entire plant for the wholesale manufacture and distribution of narcotics which reflected sales of half kilograms and kilograms of narcotics and a bank role of some $16,-000 seized (admittedly in an unlawful search and entry of petitioner's home, in violation of the Fourth and Fifth Amendments);

(b) The severity of the sentences herein, ten years, plus five years to run consecutively were based upon extensively and materially false pre-sentence information charging that petitioner's 1967 black Eldorado was missing for six months *and it was involved with the murder of one, Phillip Buzzio,* in violation of the Fifth Amendment;

(c) The Court abused its "broad" judicial discretion by not disclosing the derogatory pre-sentence information relative to the murder of one, Phillip Buzzio, which denied petitioner an opportunity to refute and rebut the same." (petition verified September 22, 1972, p. 2) His petition prays: "(4) That the Court vacate and set aside the . . . [sic] sentences and re-sentence petitioner, with his presence, to the minimum sentence permitted by law."

### B. *Use of disclosures in probation officer's report*

Surely there does not exist a more vibrant or exacting instance of surcharge on the judicial conscience than the application on sentence of disclosure set out in the confidential report of the probation officer to the Court. The judicial fact finder must pick and choose with great sensitivity from among the alleged factual recitals therein reflected and make a cautious estimate of which portions or fragments to adopt and which to reject. The judge is presumed to be able to "winnow substance from gossip."[4] Of course, with factors favorable to a defendant, he experiences only satisfaction in making appropriate allowance on sentence.

Frequently a veritable cataract of vital disclosure challenges the judge's credulity—which were induced by malice and which prompted by either a realistic or fanciful desire to assist. For that reason alone, the judge must exercise the greatest caution before releasing the confidential probation report in unexpurgated form. We have seen much harm befall both innocent and vengeful informants at the hands of enraged defendants who, on real or fancied facts, placed their own interpretation on the reasons that induced disclosure. And so it is with this defendant; he insists that on sentence we held against him— and most severely—a certain isolated,

2. The three co-defendants were sentenced to imprisonment terms of five, ten and thirteen years.

3. See, United States v. Baratta, 397 F.2d 215 (2d Cir.), cert. denied, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968).

4. Baker v. United States, 388 F.2d 931, 934 (4th Cir. 1968).

unconnected statement in the confidential report of the probation officer that petitioner's automobile "was missing for six months *and it was involved with the murder of one, Phillip Buzzio,*" (see petition, p. 2). We regarded it then, as now, the rankest piece of hearsay and gave it no weight whatever. It was for that reason that the official court reporter's minutes on sentence contain no reference to it—not, as petitioner insists, because we did not put him on notice of a point that weighed heavily with us and against him.

As to the alleged disparity in the sentences meted out by us to petitioner and his co-defendants, we believe our answer is to be found in our opinion in United States v. Haggett, D.C., 360 F.Supp. 502 filed contemporaneously herewith and which we here include by reference.

We took from the probation report here only such material as commended itself to our belief because it supported and fitted the evidence at trial as to defendant's deportment pattern and, despite his denial from the stand and rejected by the jury, established that Baratta over an extensive period of time was an active trafficker in narcotic drugs on a comparatively large scale. Included in this assessment, but by no means limited thereto, was the revelation of "an entire plant for the wholesale manufacture and distribution of narcotics which reflected sales of half kilograms and kilograms of narcotics and a bank role of some $16,000 seized admittedly in an unlawful search and entry of petitioner's home . . ." (petition, p. 2) (We discuss below the law pertaining to the use of such "unlawful" material on sentence.)

■ We did not disregard, as petitioner demands, his totally unexplained wealth, including large sums in cash, which he possessed—an inordinate accumulation for a man without a legitimate work record for many years.

### C. *Applicable precedents*

In the main, out of the constant panorama of misery which the criminal calendar presents, there is no one connected with the entire judicial process in a better position to assess, estimate or form a judgment as to the relative strength or weakness of a defendant as a human being enmeshed in the criminal law than the trial judge. Often he is witness to the unfolding of events which portray the true extent of a defendant's participation in the prohibitive act; his fall from grace or the depth of iniquity he has reached; how he can best be helped and who enlisted in the process, or what is required to register the community's abhorrence towards his outrageous deportment.[5]

■ Permission given a defendant to share with the sentencing judge the disclosures in the confidential report of the probation officer made by him solely to the judge, should be granted only after careful scrutiny by the judge; it is a matter within his sound discretion.[6]

■ The sentencing judge may consider, and if impressed give weight to, material involving a defendant which would be inadmissible at trial, or disclosures concerning his conduct revealed in the course of his prior trial which ended in an acquittal, or wiretaps previously suppressed.[7] No clamp should be placed upon the sentencing judge or barrier erected to prevent him from pursuing (in depth if his judicial conscience directs) a reasonable inquiry into a defendant's behavioral pattern over a substantial period of time antedating the criminal act which brought him before

5. United States v. Haggett, *supra.*

6. United States v. Brown, 470 F.2d 285 (2d Cir. 1972).

7. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970); United States v. Schipani, 435 F.2d 26 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); United States v. Sweig, 454 F.2d 181 (2d Cir. 1972).

the court—for whatever good or bad may come from it. If he is to bring to his mission a determination to make a fair estimate on which to predicate a just sentence to defendant and community alike, his access to information should be "almost completely unfettered . . ."[8] After all, the sentencing judge should be expected to make a search sufficient to obtain some insight into the defendant as a character—he is sentencing the defendant, not the prohibited act he committed.

As in the petition here, the sentencing judge often discovers material relating to a defendant's activity that fits the pattern of criminal behavior revealed at trial; it may diminish or increase the judge's estimate of a defendant's participation in the criminal activity involved.[9]

As hereinabove mentioned, no application was ever made to us by defendant or anyone in his behalf to examine the confidential report made to us by the probation officer. Since disclosure is a matter within the sound discretion of the sentencing judge, and the failure to even request it is not controverted, non-disclosure cannot form the basis of a motion to vacate.[10] Mandatory disclosure cannot come to pass by Court decisions.[11] If a defendant's application to examine such report is denied in the exercise of discretion of the sentencing judge, such denial does not constitute an abuse of discretion.[12]

### D. *Disposition*

We have meticulously reviewed everything pertinent to the sentence heretofore imposed on this defendant. We have considered his petition with care. Search as we did for matter of legal weight favorable to him, we find our comment at the time of sentence still holds true: ". . . I would be less than frank, too, if I didn't say that there is very little in the, pre-sentence report that stands you in good stead at this perilous time in your life." (court minutes, August 22, 1967, p. 33) We must do justice not alone to the accused but to the accuser as well—the other party to this litigation, the community represented by plaintiff. We are constrained to and do deny the petition in all respects.

So ordered.

---

8. United States v. Schipani, supra; Kyle v. United States, 266 F.2d 670 (2d Cir. 1959), cert. denied, 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959).

9. Armpriester v. United States, 256 F.2d 294 (4th Cir. 1958).

10. Roeth v. United States, 380 F.2d 755, 757 (5th Cir. 1967).

11. United States v. Virga, 426 F.2d 1320 (2d Cir. 1970).

12. United States v. Holder, 412 F.2d 212 (2d Cir. 1969); Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969); United States v. Dockery, 145 U.S.App.D.C. 9, 447 F.2d 1178 (1971), cert. denied, 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266 (1971); Verdugo v. United States, 402 F.2d 599, 609 (9th Cir. 1968); Fernandez v. Meier, 432 F.2d 426 (9th Cir. 1970); Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).