UNITED STATES of America

v.

Winston **CABRERA**, Defendant.

No. 90 Cr. 389 (JSM).

United States District Court,
S.D. New York.

Jan. 28, 1991.

Otto G. Obermaier, U.S.Atty. for S.D. N.Y. by Nancy Northrup, Asst. U.S.Atty., New York City, for U.S.

John J. Byrnes, The Legal Aid Society, Federal Defenders Unit, New York City, for defendant.

OPINION

MARTIN, District Judge:

On June 5, 1990, law enforcement officers broke into apartment 3–K at 2800 Jerome Avenue in the Bronx where they seized a .22 caliber handgun and 277.7 grams of cocaine. In an Opinion and Order dated October 17, 1990, this Court held the search of apartment 3–K to be unconstitutional because the agents did not have a warrant and lacked valid consent for the search.

Despite this Court's holding that the search of apartment 3–K was unconstitutional, the Government now argues that in imposing sentence on the defendant Cabrera, the Court should increase the offense level under the Sentencing Guidelines by two levels because the .22 caliber handgun

was found in the apartment which Cabrera had been using. The Court is also asked to increase the offense level by two additional levels under Section 2D1.1(a)(3), because the quantity of cocaine found in apartment 3–K increases the total amount of cocaine involved in this transaction to an amount above two kilograms. If the Court were accept the Government's contention that the illegally seized evidence could be used in calculating the offense level under the sentencing guidelines, the result would be to increase the minimum term the Court must impose under the Guidelines by 27 months.

On its face, the Government's argument that illegally seized evidence might be used to increase a jail sentence to be imposed by more than two years would seem totally at odds with the principles enunciated by the Supreme Court in numerous cases holding that illegally seized evidence may not be used in a criminal prosecution. *See, e.g., Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The Government's position finds support, however, in the decision of the Second Circuit in *United States v. Schipani,* 435 F.2d 26 (1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971), in which the Court held that illegally seized evidence could be considered in imposing sentence.

While *Schipani* clearly supports the proposition urged by the Government, the Court concludes that the reasoning of *Schipani,* which was decided long before the Sentencing Reform Act's guidelines were even contemplated, simply does not apply to the current post-guideline sentencing process. The Government has not cited any post-guidelines case which supports the use of illegally seized evidence in calculating a guideline sentence. The issue before the Court appears to be one of first impression.

At the time *Schipani* was decided, courts possessed almost unfettered discretion to impose whatever sentence the judge deemed appropriate within the broad statutory limits. In this context, the Second Circuit reasoned in *Schipani,* 435 F.2d at 28, that:

> applying the exclusionary rule for a second time at sentencing after having already applied it once at the trial itself would not add in any significant way to the deterrent effect of the rule.

This underlying premise on which *Schipani* rests simply does not apply in the post-guideline era.

As noted above, the fact that Cabrera's offense involved the use of a gun mandates that the Court increase the applicable offense level for his crime by two levels and, on the facts of this case, requires the Court to impose at least 12 months of additional jail time. Thus, the provisions of the guidelines make the use of the gun analogous to a statutory element of the crime. There is no doubt that had Cabrera been charged under a statute that, on its face, provided for the addition of a mandatory additional prison term if the underlying offense involved the use of a weapon, the Fourth Amendment would preclude the use of illegally seized evidence to support that charge. We see no reason to draw a distinction in this case simply because the additional element was added by the Sentencing Commission rather than by Congress.

In reasoning that little deterrent effect would be added by applying the exclusionary rule to issues of sentencing, the Court in *Schipani* observed that it was unlikely that law enforcement officials would engage in illegal conduct to obtain information for sentencing. 435 F.2d at 28. That reasoning was valid when applied to a sentencing structure that gave the district judge almost unlimited discretion in selecting a sentence below the statutory maximum, including the discretion to consider or not consider suppressed evidence. *See United States v. Mapp,* 476 F.2d 67, 82 (2d Cir.1973). This pre-guideline reasoning is not valid when applied to a sentencing scheme that requires the Court to provide specific increases in the sentencing level in specific factual settings. The existence of sentencing guidelines are well-known to police officers and federal agents and the impact of specific evidence on the sentence

# 136

a defendant will receive surely cannot have escaped their notice. *See United States v. Bye,* 919 F.2d 6, 7 (2d Cir.1990) (agent testified to advising defendant his sentence would be calculated on the basis of quantity of narcotics). In these circumstances substantial deterrent effect can be expected if law enforcement officers are on notice that illegal evidence may not be used to compel the Court to impose substantially increased punishment on a convicted defendant.

The importance of the exclusionary rule in securing to all our citizens the protections afforded by the Fourth Amendment was established over 75 years ago in *Weeks v. United States, supra,* 232 U.S. at 393, 34 S.Ct. at 344, where the Court observed:

> If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.

Winston Cabrera has been convicted of a serious crime and he will receive a substantial sentence. If we are to ask him to accept that sentence and, in the future, conform his conduct to the requirements of the law, he is entitled to know that the courts also require law enforcement officials to conform their conduct to the law's requirements and will not sanction the illegal search and seizure that took place here by using the evidence seized to increase his sentence by over 2⅓ years.